In re Estate of Alexander Miller, deceased.  Alexander Miller's Appeal.

[Marked to be reported.]

*Will—Issue devisavit vel non—Evidence—Hypothetical question.*

On an application for an issue devisavit vel non, a hypothetical question embracing all the material facts which the contestant's evidence tends to prove is sufficient, although it does not include facts which may be fairly considered irrelevant, or disputed facts which proponent's evidence tends to prove.

*Will—Testamentary capacity—Undue influence—Issue devisavit vel non —Evidence.*

On an application for an issue devisavit vel non, contestant's undisputed evidence that the decedent, a man seventy-three years old, worth over $300,000, and having six children, left by his will more than three fourths of his estate to one of them; that for ten years before his death, a period covering the date of the will, he drank largely of intoxicating liquors, and was afflicted with locomotor ataxia; conflicting evidence of disinterested witnesses that he was almost constantly in a state of intoxication, and evidence of interested witnesses that during the period named, the excessive use of intoxicants had to a great extent weakened his memory and his will power, are insufficient to go to the jury on the question of testamentary capacity; but where the contestant's evidence further shows that the son who was his principal beneficiary had had great influence over him from a time antedating the execution of the will up to his death; that this son had lived with him, had been his confidant for years, his helper in .his physical infirmities and his advisor in his business affairs, and that he had asserted that the reason of his constant attention to his father was that "there was boodle in it for him," and that the other children had no show as "he had things too well fixed for that;" and the evidence for proponent showed that this son was not personally present when the will was executed, and tended to show that at times testator had capacity to make a valid will, the evidence is sufficient to go to the jury on the question of undue influence, and the court should grant an issue.

*Will—Testamentary capacity—Beneficiary under will—Undue influence —Presumption.*

Where a testator, although possessed of testamentary capacity, is aged, infirm bodily, with mental faculties impaired, if a confidential advisor be a large beneficiary under the will there is a presumption of fact that undue influence was brought to bear on the mind of the testator, and the burden is on the beneficiary to rebut that presumption.

*Issue devisavit vel non—Evidence—Interested witnesses—Credibility of witnesses—Province of jury.*

On an application for an issue devisavit vel non where undue influence is alleged, testimony of interested witnesses should not be treated as deserving of little credit, as these witnesses are generally the only persons who have every opportunity to observe the relations between the maker of the will and him whose unlawful influence in procuring it is alleged; and while their interest may affect their credibility, yet their credibility is for the jury, and not for the court.

Argued Nov. 10, 1896.    Appeal, No. 111, Oct. T., 1896, by Alexander H. Miller, from decree of O. C. Allegheny Co., June T., 1892, No. 202, dismissing petition for an appeal from register of wills.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. MITCHELL and FELL, JJ., dissent.

Petition for an appeal from register of wills admitting will to probate. Before OVER, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing the appeal.

*W. H. Tomlinson* and *Charles E. Hogg*, for appellant.—Where there is a substantial dispute upon a material question of fact such an issue is a matter of right, and the test of substantiality in the dispute is that a verdict could be supported by the trial judge, upon a review of all the evidence adduced: Sharpless's Est., 134 Pa. 250; Knauss's App., 114 Pa. 10; Armor's Est., 154 Pa. 517.

A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in; a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons and objects he desires shall be the recipients of his bounty: Wilson v. Mitchell, 101 Pa. 495; Thomas v. Carter, 170 Pa. 272.

On the trial of an issue devisavit vel non a conflict in the evidence, a contrariety of the opinions expressed, and the veracity of the witnesses, are matters peculiarly within the province of the jury, and with them the court has nothing to do: Shaver v. McCarthy, 110 Pa. 339; Newhard v. Yundt, 132 Pa. 324; Shaffer v. Clark, 90 Pa. 94; Weaver v. Craighead, 104 Pa. 288; Grubbs v. McDonald, 91 Pa. 236; Irish v. Smith, 8 S. & R. 573; McTaggart v. Thompson, 14 Pa. 149; Reichenbach v. Ruddach, 127 Pa. 564.

Undue influence to affect a will must be such as to subjugate the mind of the testator to the will of the person operating upon it: Tawney v. Long, 76 Pa. 106; Trumbull v. Gibbons, 2 Zabriskie's N. J. Rep. 155; Tyler v. Gardiner, 35 N. Y. 559; Reeme v. Parthemere, 8 Pa. 462; Davis v. Calvert, 5 Gill & John. 269.

That a will may be established in part and rejected in part is well established law: Steadman v. Steadman, 14 Atl. Rep. 406; Florey v. Florey, 24 Ala. 241.

The declarations of the principal legatee are competent evidence when the question of his fraud or undue influence is

involved in the case, and may be considered as any other testimony: Morris v. Stokes, 21 Ga. 552; Redf. Am. Cas. on Wills, 200; Herster v. Herster, 116 Pa. 612; Rambler v. Tryon, 7 S. & R. 90.

The court in considering the sufficiency of the testimony to establish a fact must take the evidence as true with every reasonable influence favorable to him who has the burden of proof: Blakeslee v. Scott, 37 Leg. Int. 474; Hiss v. Weik, 78 Md. 439.

*Johns McCleave*, with him *Clarence Burleigh* and *D. T. Watson*, for appellee.—The will was not obtained by undue influence exercised by Florence C. Miller: Dean v. Negley, 41 Pa. 317; Lang's Est., 44 Leg. Int. 431.

The burden of proof as to the existence of such constraint, at the very time of making the will, is upon the contestant: Levis's Est., 140 Pa. 179; Trost v. Dingler, 118 Pa. 269; Miller v. Oestrich, 157 Pa. 268; Hoshauer v. Hoshauer, 26 Pa. 407.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

Alexander H. Miller, a member of the bar of Allegheny county, on September 4, 1887, died at the age of seventy-three years; his wife had died seven years before, but he left surviving him six children, Alexander H., this appellant, with four brothers and a daughter, Virginia, married to Patrick H. Winston. He left a will, dated May 24, 1883, to which were appended two codicils, one dated May 29, 1884, and the other July 20, 1886. His estate, made up of realty and personalty, was valued at between three and four hundred thousand dollars.

By the will he gave his executors in trust for his daughter Virginia, $25,000; to his son Zant, $5,000; to his son Hampton, an annuity of $500 for life; to Thomas, $5,000; to his brother George W., an annuity for life of $200. All the residue he gave absolutely to his son Florence, and appointed him and James J. Donnell executors of the will.

By the first codicil, he adds $5,000 to the bequest to his son Thomas, making it $10,000; to his son Alexander H., who had been given nothing in the will, he gave an annuity for life of $400. By the second codicil, he gave to his son Hampton, in

addition to his annuity, a house and lot then in the son's occupancy, and increased Alexander's annuity from $400 to $500.

The result of the will and codicils was to leave full three fourths of the estate to his son Florence. The will was proved September 10, 1887, without notice to the heirs or legatees; an appeal was taken by Hampton J. Miller from the decree admitting the will to probate, which was dismissed because of neglect of appellant to file the bond required by law (See 159 Pa. 562). On June 27, 1892, Alexander H. Miller, this appellant, presented his petition to the orphans' court for allowance of an appeal from same decree. In this petition he averred testamentary incapacity of his father at the date of the execution of the will and codicils, and undue influence exercised over him by Florence C. Miller, the principal beneficiary, to procure the making of them. It is not important, in the issue before us, to notice and discuss the decrees on this petition in the court below, in the interval between probate and dismissal of petition; they afford us no aid in the decision of this contention. It is sufficient to say the appellant got his case properly before the court below, and that there was a regular judicial decree on the merits, after hearing, by a court of competent jurisdiction, against him, from which he now appeals to this court.

He alleges the court erred: first, in not determining there was evidence for a jury that the testator lacked testamentary capacity at the date of the execution of the will and codicils; and second, in not finding there was evidence for a jury that the will was procured by undue influence exercised over him by Florence C. Miller.

When the question before an appellate court is, whether the evidence adduced in the court below was of that character which required its submission to a jury, and the answer of the appellate court is in the affirmative, a sort of restraint in the expression of an opinion, is always necessarily imposed on the appellate court; not because of doubt in the correctness of its judgment, but because of the possible effect of elaborate discussion on the retrial of the cause. Hence, in whatever we may say in vindication of this judgment, we desire it to be distinctly understood we are not pointing out what the verdict of the jury ought to be, but only the evidence on which a jury,

after a consideration of it, may rest a verdict, if in view of all the evidence such verdict be warranted.

The appellant averred the testator lacked testamentary capacity when he executed the will and codicils; the court below, as a question of fact, determined this averment was so unfounded that there was no evidence which would warrant a jury in sustaining it, but that on the contrary, he possessed " testamentary capacity of the highest order."

It was alleged the testator had become so addicted to the use of intoxicating liquor years before the date of the will, and at that date the habit was so aggravated and confirmed, that his mental powers were weakened, and bordered on imbecility.    In proof of this, twenty witnesses were called, some of whom had peculiar and long continued opportunities of observation, who testified that he began the drink habit about the year 1865, and kept it up until after the date of the will and codicils, and until his death; it had so grown on him as early as 1879 that he then drank, at times as much as a quart a day, and that it might be easy of access, he kept it in large quantities, both at his house and law office; he bought whiskey for his own use on more than one occasion by the barrel.    One of the witnesses to the excessive use of liquor was W. A. Lewis, Esq., who commenced reading law with him in 1865, and continued in his office until 1882; some of the others were servants in his family, others street car conductors on the lines leading past his home; besides these disinterested witnesses, were some of his children, living much of the time in his house.    That he drank liquor to gross excess from 1879 to his death cannot be questioned from this testimony, unless almost every one of the twenty witnesses be guilty of flat perjury.    If they be believed, then his brain was saturated with alcohol for almost ten years before his death.

But further than this, it was averred and not denied, the testator when he executed the will and codicils was afflicted with locomotor ataxia.    This, appellant alleged, contributed to his physical and mental prostration.    As to the probable effects of alcoholism and the disease, locomotor ataxia, on the mind, the testimony of reputable experts was offered by the contestants, but rejected by the court, for the reason, that a prima facie case of incapacity had not been made out, and the further reason,

that a hypothetical question put to the experts, purporting to embrace the facts, omitted material facts proved by appellee. We do not think the grounds of the rejection sufficient; the testimony when added to that already in might have, if duly considered, affected the judgment and changed the result. But a comparison of the hypothesis with the facts contestant's evidence tended to prove, shows it embraced every material fact he alleged; he was not bound to include in it facts alleged by proponents which he denied, or facts which may be fairly considered irrelevant. Hence, in passing on the testimony, we take into consideration that which was rejected.

The learned judge of the court below went beyond the issue in his finding when he declared the testator possessed "testamentary capacity of the highest order." And while if the issue presented only this one question the error might be of no consequence, yet because of the two questions, as will be noticed in our discussion hereafter of that relating to undue influence, the error becomes very material, and therefore requires notice. Take first the undisputed facts : An aged man worth over $300,000 makes his will; he has six children; he gives more than three fourths to one of them; for ten years before his death, a period covering the date of the will, he drank largely of intoxicating liquors, besides was sorely afflicted with an incurable disease. Next take the disputed facts : The testimony of disinterested witnesses shows that by reason of the excessive use of liquor he was in almost a constant state of intoxication; interested witnesses then testify to the consumption during that period by him daily of unusual quantities of intoxicants, that, in consequence, his memory had failed, and his power of will had weakened. Is it probable in view of the undisputed facts, as well as those disputed, that testator had testamentary capacity of the highest order?. Without considering the expert testimony, is not such a conclusion opposed to common knowledge derived from observation? In our judgment, there was manifest error in so finding.

But keeping within the scope of the issue, did he possess simply testamentary capacity? That is all the law requires in a valid testamentary disposition. This the court below could have found, notwithstanding testator's established habits of intoxication. Even a judicial decree that he was an habitual

drunkard, and the appointment of a committee would have been, although conclusive as to contractual, only prima facie evidence of testamentary incapacity: Lecky v. Cunningham, 56 Pa. 370. While we are of opinion the evidence wholly fails to establish a high order of testamentary capacity, we will not say the testator was destitute of that mental capacity requisite to a valid testamentary disposition of his property.  On this first branch we sustain the court in refusing an issue, not because the decree is clearly right, but because it is not clearly wrong; the evidence of incapacity, taken altogether, is not of that weight which should constrain us to send the case to a jury.

The next question is, was the will procured by undue influence exerted over the testator by his son, Florence C. Miller? This is a question of pure fact.  As is said in Herster v. Herster, 116 Pa. 612, " Its disposition properly rests with the jury alone.  Even if the trial judge should feel that were he sitting as a juror he could not regard the evidence as sufficient to induce him to find a verdict against the will, that is not enough to justify him in taking the case entirely from the jury. . . . If the testimony is such that, after a fair and impartial trial resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute within the meaning of the act has arisen.  On the other hand, if the state of the evidence is such that the judge would not feel constrained to set aside the verdict, the dispute should be considered substantial and an issue to determine it should be directed. . . . It is perhaps well to say that undue influence may be exercised secretly as well as openly, and this is especially possible where a confidential relation exists between the principal devisee and the testator, and they dwell together in the same house."  This is the substance of our authorities in Pennsylvania on the subject.

Take now the undisputed evidence as to testator's age, habits and disease at the date of the will and codicils, what is the reasonable inference to be drawn as to his testamentary capacity? Can it be of that order which it undoubtedly was twenty or thirty years before his death, and before it had become impaired by age, drunkenness and physical infirmity?  Assuming as we

do assume, with the court below, that testamentary capacity existed, and that if voluntarily and independently exercised testator was competent to make a valid will, yet was the capacity such as by reason of its impairment it could easily be operated upon by outside influence? Then follow the facts, that Florence C., the son, lived in the house with his father, was his confidant for years, close to his person, his helper in his physical infirmities, his adviser in his business affairs; then come the gross inequalities in the distribution of the large estate; the confidant is largely the beneficiary. Next, notice the affirmative testimony of the witnesses. B. F. Young testifies that he frequently saw Florence with his father when the latter was intoxicated; once on the cars from Uniontown to Pittsburg, he says, " I spoke to Florence in reference to the old man's condition at the time, and asked him why he alone always accompanied the old gentlemen in that condition; he answered at the same time striking his chest with his hand, that " there was boodle in it for him." Further on, after stating that he had remarked to Florence he supposed his father would leave his brother Hampton in good circumstances, Florence replied : " He mustn't be too —— sure of that, because I have got something to say in the matter." Then about four months after the father's death he asked Florence what chance his brothers and sister would have to break the will, and he replied : " They didn't have the least possible show on earth, that he had things too well fixed for that." Virginia B. Winston, the daughter, testifies that in 1881, Florence made a proposition to her to join him in a conspiracy to have the other brothers disinherited, which she refused. Sarah Outlaw, a servant, testified that she had frequently heard Florence say he could do anything he pleased with his father. Nine witnesses, interested and disinterested, give like testimony, tending to show the extent of the influence obtained by Florence over his father, from a time antedating the will until his death.

" Where a testator, although possessed of testamentary capacity, is aged, infirm bodily, with mental faculties impaired, if a confidential adviser be largely a beneficiary under the will, there is a presumption of fact that undue influence was brought to bear on the mind of the testator, and the burden is on him to rebut the presumption :" Wilson v. Mitchell, 101 Pa. 495;

Armor's Estate, 154 Pa. 517. If, in aid of this presumption, many witnesses testify to positive acts and express declarations indicating the unscrupulous intention of the confidant to exert his influence in his own favor, can it be said there is no case for a jury?

Many reputable witnesses were called by proponent and heard by the court, whose evidence tended to establish a degree of sobriety on part of testator, that he correctly transacted legal business for his clients, and that when they saw him he was not under the influence of liquor, and conversed intelligently. The effect of their testimony was to show that, certainly at times, testator was not incapacitated to make a valid testament, and it properly had great weight with the court on this branch of the case. But it tended only, in a slight degree, to negative the testimony of contestant, adduced to show the undue influence exerted by Florence over his father. The court treats the evidence of the brothers and sister as deserving of little credit, because of their interest; but it must be borne in mind that, on questions of this kind, the members of testator's family and the inmates of his home are generally the only witnesses who have every opportunity to observe the relations between the maker of a will and him whose unlawful influence procures it. Their interest may affect their credibility, but if they had no interest they would seldom be in a situation to know anything material to the issue. The learned judge, also, denies the credibility of the disinterested witnesses, and arrives at his conclusions, by practically disregarding the testimony of both classes, interested and disinterested. But it was peculiarly the province of the jury to pass on the credibility of these witnesses, as has been held over and over. The learned judge does not take up the evidence and determine whether there is a substantial dispute demanding an issue, but he considers the bearing of the evidence on the issue as if granted ; analyzes, weighs it on both sides, credits and discredits witnesses, then determines according to his judgment the truth of the matter. He performed as one juror a duty which the law imposes on twelve. In fact, there is no dispute of this character in which a jury could possibly have any duty to perform, if the judge chose to assume it to the extent it was assumed in this preliminary inquiry.

That Florence was not personally present when the will was

executed is a fact to be considered with all the other evidence in the case bearing on the question of undue influence. The court treats this as most conclusive evidence in favor of the will. But this fact of itself has no such significance. If it had been alleged Florence by threats or other means had excited the fears of the father on the day the will was made, and that in terror he had given him the bulk of his estate, the fact that he was not personally present when his father and the witnesses subscribed their names, would have almost conclusively negatived such a theory; but no such theory is put forward here. It is averred, however, that by a long course of deception and falsehood practiced upon his father, Florence had prejudiced him against his other children, and had ingratiated himself in his favor, with a special view to becoming the principal object of his bounty; witness after witness was called whose testimony tended to show this. If such were the case, and the father became thereby embittered against the other children, and especially adopted Florence as his favored child, it was not specially important that Florence was not present when the will was signed; the machinations, it was alleged, which had prompted such a will, had been practiced to that end for years preceding it, and were kept up for years after to guard against a change of it. Assuming this to have been Florence's conduct he would naturally absent himself at the time the will was actually subscribed.

We think on the lines of the testimony pointed out, appellant had a case for a jury, on the question as to whether the will had been procured by undue influence of the son upon the father. And while the evidence tending to establish testamentary incapacity is not sufficient to warrant its submission to the jury on an issue involving that question, it is admissible in the determination of the second question. The condition of mind of a testator alleged to have been unduly influenced, although of testamentary capacity, is important in determining whether the act was the result of the fraudulent arts practiced upon him.

The decree of the court below is reversed, and it is further ordered that an issue be awarded to determine whether the alleged will and codicils were procured by the undue influence of Florence C. Miller.

Mr. Justice Mitchell, dissenting.

There is in this case,

1. Strong affirmative proof of every element of testamentary capacity in the act itself, the will, the codicils and the circumstances of their making;

2. The overwhelming testimony of witnesses who knew the testator, and who also knew the requisites of testamentary capacity;

3. The conclusive evidence of the actual transaction of business, personal, professional, and as trustee, amounting during the period involved, to more than $1,000,000, and no pretense that any single transaction showed incapacity;

4. On the other side the testimony of interested witnesses and the opinions of experts not worth a rush against the proved facts.

There is no trace of undue influence in the making of the will or the codicils, or in the separate custody of them by the testator for years before his death.   That he preferred one child over others. was his right as a parent, and that he preferred the son he did ought not to surprise any one who reads the testimony even of the others.   That the motives of the favorite may have been partly mercenary would not affect the fact that he was the only one who stayed with and assisted his father in his old age, or whose conduct in fact was not such as tended to drive him to drink, or to the grave.

As I am of opinion that the evidence is not sufficient to permit a jury to set aside this will I would affirm the judgment.

Mr. Justice Fell joins in this dissent.