## Buechley's Estate.

*Wills—Probate—Undue influence — Presumption — Confidential relation—Mental capacity—Evidence—Burden of proof.*

1. Where a son, who is the principal legatee under his father's will, has stood in a confidential relation to testator, a presumption of undue influence arises which he must rebut, but such presumption arises only where there is proof of extreme infirmity or mental weakness.

2. If there is nothing in the evidence to support a finding of mental or physical weakness when testator executed the will, the burden is on the contestants to prove undue influence, and, to do so, it must appear that such influence controlled testator's mind at the time and in the act of making his will.

3. Mere solicitation on part of a beneficiary is not enough to establish undue influence.

4. Slight circumstances, which might tend to create suspicion, are not sufficient to establish the fact of undue influence.

5. An issue devisavit vel non will not be granted where it appears that a son who held a confidential relation to testator was the principal beneficiary; that the son was not present when the will was made; that testator wrote it himself at a time when he had business capacity; and the evidence as to undue influence on part of the son, and of physical and mental weakness of testator, is of the most meager character, and entirely insufficient to establish the claim of contestants.

Argued May 21, 1923. Appeal, No. 5, Jan. T., 1923, by Laura B. Kenney et al., children of testator, from decree of O. C. Schuylkill Co., refusing issue devisavit vel non, in estate of William Buechley, Sr., deceased. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Appeal from register of wills. Before Wilhelm, P. J. The opinion of the Supreme Court states the facts.

Appeal dismissed. Laura B. Kenney and Fred Bryson Buechley, children of testator, appealed.

*Error assigned* was decree, quoting it.

*Cyrus G. Derr,* with him *P. B. Roads* and *Geo. M. Roads,* for appellants.—If a man's mind be impaired, though not to the extent of disabling him from making a will, and he executes a testamentary paper largely preferring a son who, beyond and in addition to kinship, stands in a confidential relation to him, there arises a presumption that the preference was the result of undue influence exercised by such son, and the latter, if his claim be legally challenged, is bound to rebut such presumption by evidence: Miller's Est., 179 Pa. 645; Friend's Est., 198 Pa. 363; Phillips' Est., 244 Pa. 35.

*Joseph W. Moyer,* for appellee.—The issue was properly refused: Hooks's Est., 207 Pa. 207; Caughey v. Bridenbaugh, 208 Pa. 414; Dean v. Negley, 41 Pa. 312; Herster v. Herster, 122 Pa. 239; Tawney v. Long, 76 Pa. 106; Allison's Est., 210 Pa. 22; Tyson's Est., 223 Pa. 596; Gongaware v. Donehoo, 255 Pa. 502; Phillips's Est., 244 Pa. 35; McNitt's Est., 229 Pa. 71; Masterson v. Berndt, 207 Pa. 289; Tetlow's Est., 269 Pa. 486.

OPINION BY MR. JUSTICE WALLING, June 23, 1923:

William Buechley, Sr., of Pottsville, died in 1919, survived by three children, viz: Mrs. Laura B. Kenney, William Buechley, Jr., and Fred B. Buechley. The son, William, had long been the partner of his father in the lumber business, and produced what purported to be the latter's holographic will made in January, 1910, wherein one thousand dollars was given to the son Fred, bank stock worth $9,750 to the daughter and, as appellee construes the instrument, the residue of the estate, valued at over one hundred thousand dollars, to him (William), who was made executor. From the probate of the will, the daughter and son Fred (contestants) appealed to the orphans' court where an answer was filed and testimony taken. The contest was based mainly upon alleged undue influence and lack of testamentary capacity. That court filed a comprehensive opinion and entered a decree

refusing to award an issue devisavit vel non, from which the contestants brought this appeal.

The execution of the will and the testamentary capacity of William Buechley, Sr., were established beyond controversy; but the serious contention of contestants is, that the son, William, stood in a confidential relation to his father, which the evidence justifies, and that, being the principal legatee, a presumption of undue influence arises which he must rebut. Such presumption, however, arises only where there is proof of extreme infirmity or mental weakness. As stated by Mr. Justice FRAZER in Gongaware v. Donehoo, 255 Pa. 502, 508: "While it is true that, where a testator leaves a substantial part of his estate to one occupying a confidential relation, the burden is on the latter to show that no improper influence controlled the making of the will (Adam's Est., 220 Pa. 531); yet this presumption arises only where there has been proof of extreme infirmity or mental weakness," citing in support thereof the leading case of Phillips's Est., 244 Pa. 35, 44, 46. In the case of Miller's Est., 179 Pa. 649, and 187 Pa. 572, relied upon by appellants, the facts were different; in that case there was evidence from which the jury might find that the testator's mental faculties were greatly impaired. This distinction is pointed out in Friend's Est., 198 Pa. 366. It therefore becomes important to determine what the evidence is as to testator's mental and physical health when the will was made. He was then sixty-five years of age, actively engaged in his business and also as director and auditor of a large banking institution, and continued so until he became paralyzed five years later. That his mind was good is established by overwhelming evidence, including that of the family physician, of his associates at the bank, in his office and elsewhere, as well as by the witnesses to the will. No one testifies to the contrary and the evidence for contestants amounts only to some slight circumstances entirely insufficient to create any doubt as to the mental ability of the testator. Among such cir-

cumstances are, (a) the testimony of the daughter and her husband that after Mr. Buechley fell and injured his head (which he did in 1906) he acted differently; (b) that, when he visited them a few days before the will was made, he was somewhat intoxicated, walked with difficulty, mumbled his words and could not raise his right arm to his head; (c) that he shed tears while reading a repentant letter from his erring son Fred, and frequently stayed at a hotel at times when he was drinking heavily; and (d) that the legacy to the daughter is written in at the end of the will as if an afterthought. Further, the daughter says that in 1907 her brother William told her their father was getting so bad he should be sent away. This the brother denies; but, if he made the remark, it was probably because of the father's intemperate habits, for the record is barren of evidence that testator ever said or did anything indicating a lack or failure of mind. Nor is there proof that, when the will was made, testator was suffering from any sickness or bodily infirmity, although he was a heavy man and clumsy upon his feet, especially when under the influence of drink, as he frequently was, although perfectly sober when he drew and executed the will. Again, the will written by testator in good form and excellent penmanship is evidence of both mental and physical ability, as are also numerous book entries he made of business transacted by him about the same date.

As there is nothing in the evidence to support a finding of mental or physical weakness when he executed the will, no presumption of undue influence arises, and the burden is upon contestants to prove it; to do so, it must appear that such influence controlled the testator's mind at the time and in the act of making his will: Goss's Est., 274 Pa. 278. Here again the evidence fails, for proponent was not present when the will was written or executed nor does it appear that he influenced his father with reference thereto. The only evidence that might tend to show an attempt to do so is testator's alleged declaration,

in effect, that he would give nothing to Fred and that while Bill (the proponent) wanted it all he (the father) was going to take care of his daughter; which tends to show he was not under the influence of any of his children. Moreover, mere solicitation on part of a beneficiary is not enough to establish undue influence: Trost v. Dingler, 118 Pa. 259; Masterson v. Berndt, 207 Pa. 284. As a son, business associate and next door neighbor, proponent had ample opportunity to influence or attempt to influence his father, but that does not prove he did so (see Tyson's Est., 223 Pa. 596, 598), while his own positive testimony is to the contrary. Mere slight circumstances, which might tend to create suspicion, are not sufficient to establish the fact of undue influence. The language of the Chief Justice in Tetlow's Est., 269 Pa. 486, 496, is applicable here, viz: "The case against the will is most weak (without regard to the proofs on the other side), and, when the strong evidence presented by proponent is considered, the proofs relied on by contestants are insufficient to sustain a finding in their favor, either on the ground of undue influence or lack of testamentary capacity. Therefore, the court below did not err when it refused to grant an issue d. v. n."; and see Kessler v. Hugus, 271 Pa. 512; Kustus v. Hager et al., 269 Pa. 103; Fleming's Est., 265 Pa. 399; White's Est., 262 Pa. 356. A careful examination of the evidence leads to the conclusion that William Buechley, Sr., made the will in question as his own free act and was fully competent to do so. In such case a will cannot be set aside merely because it may seem unjust.

The assignment of error is overruled and the decree is affirmed at the cost of appellants.