## Pleibel's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ., and Niles, P. J., nineteenth judicial district.

The facts appear from the opinion of

NILES, P. J., nineteenth judicial district, Hearing Judge. — The petition whereon the citation was issued by the decree of May 22, 1931, the pleadings, and uncontradicted evidence show to the court that Caroline L. Pleibel died July 20, 1929, at the age of seventy.

A writing purporting to be her holographic will, dated March 4, 1925, and attested by two subscribing witnesses, Margaret McCracken and William S.

Fleming, was admitted to probate by the Register of Wills of Philadelphia County July 25, 1929, and letters testamentary were granted to John Eckstein Beatty and Mary A. S. Beatty, the executors nominated therein, who were the residuary legatees.

May 18, 1931, Albert L. Pleibel, brother of the testatrix, duly filed his appeal from the decree of the register, and the record of the proceedings before the register was certified to this court.

Subsequently, July 15, 1931, George F. Pleibel and W. T. Pleibel, sons of a deceased brother, also appealed from the decision of the register of wills.

The issues raised by these two petitions are the same, to wit: (1) Whether or not the said writing was procured by undue influence, duress or constraint practiced upon the said decedent by John Eckstein Beatty and others; (2) whether or not the said writing is the will of the decedent.

A hearing was had March 17 and 18, 1932, evidence received and arguments of counsel for all parties were heard upon carefully prepared briefs.

It was admitted and amply proven that the testatrix at the date of the will was a woman of more than ordinary intelligence, education, business ability, strength of will and in good physical health and mental vigor; with mentality unimpaired.

She selected the time, place and manner, as well as the witnesses to the execution of her will.

Neither Mr. nor Mrs. Beatty, the executors and residuary legatees, was present at the execution, nor was any evidence produced rising above merely implied suspicion that they had any part in its preparation or knowledge of its contents until after the death of the testatrix.

The only ground urged against the validity of the will was that it was executed as the result of undue influence exercised on Caroline L. Pleibel by John Eckstein Beatty and Mary S. Beatty.

It was shown that Mr. Beatty, a member of the Philadelphia Bar, was an attorney and confidential adviser of the decedent for many years.

She used his law office for her own personal convenience and business. She loaned her money and credit to him, and he was indebted to her at the date of the will and at her death, amounting to a large portion of her estate. She allowed him to collect money due her and to take title to real estate purchased with her money. Their relations of attorney and client were close and confidential; and, in addition, their friendly relations were intimate. Decedent was in the habit for many years of visiting at the country and city homes of Mr. and Mrs. Beatty. She nursed members of their family in sickness, and they reciprocated by caring for her in their homes during her illness.

There was no evidence of control or undue influence by which the will or actions of the decedent at any time were dominated by Mr. and Mrs. Beatty; and particularly no evidence from which it could be inferred that at the time of the execution of the will the decedent was in that act not a free agent or was the implement of the craft, superior will or influence of either Mr. or Mrs. Beatty.

The evidence produced falls short of anything which the courts of Pennsylvania have held sufficient to warrant the submission to a jury of the issue. A verdict rendered against the will upon the evidence produced before the hearing judge could not be sustained.

It was made clear that the decedent's feelings of resentment toward her brother and her nephews and nieces, arising from conduct regarding litigation in which they were concerned, produced a settled determination that none of them should be beneficiaries of her estate to any greater extent than the debt which she admitted she owed to her brother, the security and payment of which she provided for, but nothing in addition.

While not very essential, there was illuminating evidence from Charles C. Babcock, Esq., her legal adviser in Atlantic City, N. J., of her determination, in considering another will or wills, that neither her brother nor her nephews and nieces should be her beneficiaries. Whatever may have been her motives in consulting with Mr. Babcock regarding other wills which were never executed, her definite purpose was that she preferred to have her whole estate expended in an ostentatious mausoleum, or public charities, rather than have her collateral relatives receive anything.

Some evidence was received regarding decedent's peculiar personal and social conduct. The testimony, if believed, would at most indicate that the decedent upon occasions exhibited to one set of her acquaintances habits of a mean, crafty and extremely miserly character.

There was offered evidence that at the same time to another set of acquaintances she maintained an entirely different social status.

All of this was without relevancy to the issue which, under the pleadings and evidence, was alone of importance, to wit: Whether the probated will was executed as the result of undue influence at the time of execution exercised by Mr. and Mrs. Beatty.

The fact, if it be a fact, that decedent gave money and property to Mr. Beatty, her attorney and confidential friend, or executed notes payable to his order, which he had discounted and the proceeds of which he applied to his own use, would not warrant the inference that the will making him and his wife residuary legatees was produced by undue influence. During her life she was competent and had an undoubted right of her own free will to transfer in any way her whole estate to Mr. Beatty, either to be considered as a loan or as an outright gift. She had the same right to give all to Mr. and Mrs. Beatty by her will, provided it was her will and not her act dominated by Beatty's will or by such influence as the law stigmatizes as undue.

There is no evidence in the case as presented upon which a verdict against the will could be sustained in harmony with the Pennsylvania decisions.

To sustain the charge of undue influence, it must be shown that testator's mind was under its control at the time and in the very act of making his will: Aggas v. Munnell et al., 302 Pa. 78.

In order to constitute undue influence sufficient to void a will there must be imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumstances, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in making the will: Koons's Estate, 293 Pa. 465.

Undue influence, without direct proof upon the point, cannot be made out by circumstances which, though to be expected if there was fraud, are equally consistent with its absence; and such circumstances cannot, whether taken singly or collectively, justify an inference of wrongdoing: Caughey v. Bridenbaugh, 208 Pa. 414.

*David F. Maxwell, Chester N. Farr, Jr.,* and *Edmonds, Obermayer & Rebmann,* for exceptants.

*John Whitaker Lord, Jr.,* and *Joseph R. Embery,* contra.

VAN DUSEN, J., October 28, 1932. — Testatrix was an eccentric miser, but otherwise a woman of good mentality, able to handle her own business affairs. Her lawyer was John E. Beatty (though her affairs were business rather than legal), and he and Mrs. Beatty were also her personal friends. She was accustomed to spend a good deal of time in his office. One day she appeared there with

a will in her own handwriting, already executed, in which Mr. and Mrs. Beatty were practically sole beneficiaries and executors, and asked two of the office employes to witness it, which they did. Beatty was not there. What became of the will thereafter until it was offered for probate does not appear. Beatty died before the hearings.

Evidence was given of a number of circumstances, which we will refer to briefly to show that they have not been forgotten, but which singly and together are suspicious only, and not proof from which undue influence can be inferred.

About the time the will was made, Beatty was acting as the agent of testatrix in handling the most important transaction of her life, the sale of the Atlantic City property, which was almost her whole estate. He received payments on the purchase money mortgage. The last payment on principal, received ten days before her death, Beatty did not pay to her, and did not list as an asset of the estate. Before this sale and thereafter, money was borrowed from banks on notes signed by Beatty and the testatrix, and eventually this mortgage was given as collateral for the loans at one bank. The proceeds of these loans went to Beatty, and they were reduced and increased. Checks for some payments by Beatty to testatrix were produced, but the true state of accounts between them is not known, and it is probable that she was obligated for a large sum on Beatty's account at her death. In his answer he claims that these notes were given him for value, and seems to say that the borrowings of testatrix were for her own account.

Testatrix directed that other moneys due her should be paid to Beatty. The house in which she lived stood in Beatty's name, and he claims in his answer to have bought it with his own money, though he wrote to her brother: "Carrie purchased the property on Swain Street."

An Atlantic City lawyer named Babcock drew two wills for testatrix in which she gave her property for a mausoleum and for charity, and only a small legacy to Beatty. The last of these he left with her in Beatty's office, and she said she was going to execute it. Nothing more is known of it. Testatrix said to several witnesses that her property was to be disposed of substantially on these lines. An incomplete draft will in her handwriting on the same lines was found on Beatty's desk after her death. The will contains language such as a lawyer would use, which is not familiar to all laymen. But so does a will which testatrix drew for a friend, and a letter she wrote to Babcock about her will.

The position of the contestants substantially is that, where there is a confidential relation between testatrix and the principal beneficiary (the existence of which may be granted in this case), a mass of suspicious circumstances which one would like to see explained raises a presumption of undue influence. This is a dangerous doctrine, and we find no authority for it. It would be substituting suspicion for proof. The matters above referred to show confidence or abuse of confidence, but not control.

"The general rule applicable to such cases is that, although the evidence is not sufficient to establish testamentary incapacity, as the court below has found in the present case, but does show bodily infirmity and greatly weakened mentality, a presumption of undue influence arises where a stranger to the blood of the testator, standing in a confidential relation, is benefited by the will which he has been instrumental in having executed. . . . What the law requires is that a person acting as confidential adviser to a testator, bodily infirm and mentally weak, must act in the utmost good faith, and if he is benefited in a legal sense by the will procured by him, he must assume the burden of showing deliberation, volition and understanding on the part of the maker of the will:" Adams's Estate, 220 Pa. 531, 533-534.

After referring to the nature of the bequests in the will to the confidential adviser, the rule is repeated a third time as follows (page 534):

"Certainly all of these things gave him such a substantial interest as to bring him within the operation of the rule which provides that where a testator, although possessed of testamentary capacity, is aged, infirm bodily, with mental faculties impaired, as against a confidential adviser who is a beneficiary under the will, there is a presumption of fact that undue influence was brought to bear on the mind of the testator, and the burden is on the beneficiary to rebut the presumption."

In Phillips's Estate, 244 Pa. 35, 43, 46, and in Buechley's Estate, 278 Pa. 227, the rule is stated in the latter way, including the element of mental weakness, but not referring to the element of procurement.

However, in the latest case, Llewellyn's Estate, 296 Pa. 74, the rule is thus stated: ". . . It is only where the testator is of weak mind, arising from physical or mental ailment, that a presumption of undue influence arises when a stranger to his blood procures a large legacy." To the same effect is Smith's Estate, 250 Pa. 67, 73, where the scrivener was the residuary legatee. See, also, Wolfe's Estate, 284 Pa. 169.

Abnormal character does not mean mental weakness. Misers may make wills. It is one of their few pleasures. This woman was no queerer than the testator Smith. And the supposed evidence of procurement in this case is evidence of suspicious circumstances only, possibly excepting testatrix's alleged declarations that Beatty dictated her will. While such declarations are admissible evidence, they are more corroborative than substantial, and we would not grant an issue on declarations alone (Robinson v. Robinson, 203 Pa. 400), assuming that they are sufficiently connected with the will in question. The judge who saw and heard the witness who testified to these declarations had the best opportunity to determine the weight to be given his testimony, and, from an examination of the record, we would not sustain a verdict based solely on that testimony.

As there is evidence neither of mental weakness nor procurement, no presumption of undue influence arises.

The exceptions are dismissed, and the action of the hearing judge is confirmed absolutely and the record is remitted to the register.