Hollinger Will.

Argued January 9, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George Hay Kain,* with him *William H. Kain* and *George Hay Kain, Jr.,* for appellant.

*W. Burg Anstine,* with him *Robert I. Shadle,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, March 19, 1945:
This is an appeal by Bert Lewis Wantz, residuary legatee under the will of Julia A. Hollinger, from the decree of the court below declaring her bequest to him null and void for the reason that he, having occupied a confidential relationship to decedent, had failed to sustain the burden of showing a lack of undue influence

practiced by him upon testatrix in the execution of her will.

Julia A. Hollinger died September 14, 1943, at the age of sixty-two years. She left to survive her as her only heirs Louise B. Morgan, a sister, and Daniel S. Bittinger, a brother, now deceased. The approximate value of her estate, both real and personal, was $13,050.

Decedent was the daughter of the late Judge John W. Bittinger. She was well educated and naturally aristocratic and proud in her manner. For a number of years she lived alone. During July, 1941, Bert Lewis Wantz, appellant, began to make social calls at her home. He was then, and is, a married man and the father of two children. His visits became more frequent, and finally in July, 1942, he moved into decedent's house to live with her permanently. On his first visits he brought with him a pint of liquor; later the amount was increased. At the time he moved into decedent's house her health was failing. In December, 1942, Dr. Gibson Smith became her personal physician. He found her to be a chronic alcoholic and in poor health, suffering from shortness of breath, high blood pressure, and badly infected teeth and gums. Contrary to the advice of her physician, appellant continued to furnish liquor to decedent. Together they consumed on an average of four to six quarts of liquor a week. Her condition became progressively worse and she was unable to leave the house after December, 1942. She was unable to leave the second floor of her home. Although a number of her friends and relatives sought to gain access to the house few were able to get in. If they did succeed, appellant was usually present to guard the conversation. During the period from December, 1942, to February 1, 1943, the date on which her will is alleged to have been written, she made many telephone calls for help, complaining upon one occasion that "Wantz wanted to force her to write a will". Ten witnesses testified that decedent complained to them that Wantz had forced her to write a will.

On February 1, 1943, the day the will was written, no one was present except testatrix and appellant. He stated that she had a bad day and almost died but that after he succeeded in quieting her she requested paper and pen and then wrote her will. Although she had nothing to eat that day she did have liquor. Appellant placed the will in a drawer of the highboy, which he then locked. After February 1, testatrix called her minister, Dr. Meck, to whom she expressed a deep fear of Wantz. In August of 1943 she informed one Reverend Jones that appellant had forced her to make out a will, and that she was not now allowed to use a telephone. She called the police on no less than six occasions, complaining of the treatment to which she was subjected by Wantz. On two occasions the police sent Wantz away from decedent's home but he returned immediately thereafter, entering by means of a key which he had in his possession. She informed her sister Louise that Wantz had forced her to sign a will in favor of him, that she did not want him to have a penny of her estate, and that he was very abusive to her. Several witnesses testified that they saw Wantz assault decedent and heard her screams. Two visiting nurses testified that upon several occasions her body was covered with bruises. While appellant was living at decedent's house he had complete control of her checking account and drew checks thereon for considerable sums of money, all of which checks were endorsed and negotiated by him. Vague explanations were made concerning the use of this money. Appellant said it was for household purposes but admitted most bills were paid by check. Not only did he control her checking account but he also acted as housekeeper, nurse, and business representative, negotiating the sale of her property. Admittedly, decedent relied upon his counsel and advice.

Mrs. Hollinger died at 2:00 A.M., September 14, 1943. Later the same day appellant appeared at the office of his attorney with the will. On September 18, 1943, the

will was offered for probate. A caveat was filed by decedent's sister and brother. By agreement of the parties and to facilitate administration of the estate, the caveat was withdrawn, the will probated, and letters of administration cum testamento annexo were granted to the York Trust Company. On the same date, appellees, the brother and sister, appealed from the probate of said will. It was agreed that the appeal should be heard without the granting of an issue devisavit vel non and determined by the court sitting as both judge and jury, with the same effect as though an issue had been awarded. The hearing judge filed an opinion sustaining the appeal as to the residuary clause of the will. This appeal is from the decree of the court *en banc* dismissing appellant's exceptions thereto.

Appellant contends that the court below erred in finding that a confidential relationship existed between him and decedent, that the burden was upon him to negative undue influence, and that he had not sustained that burden. When the weight of the testimony is considered these contentions are without merit.

The opinion of the hearing judge, adopted by the court *en banc,* is 83 pages long. The testimony of contestants and that of proponent is thoroughly discussed and the findings of fact are amply supported by the evidence. The evidence justifies the finding that a confidential relation existed. That testatrix was weak physically and mentally is established by appellant's own testimony. Where this physical and mental infirmity exists and circumstances establish one to be susceptible to undue influence, if a substantial part of such person's estate is left to one occupying a confidential relation the burden is upon the latter to show that in the making of the will no undue influence existed: *Schwartz's Estate,* 340 Pa. 170, 173. To constitute undue influence sufficient to avoid a will there must be imprisonment of the body or mind, fraud, threats, misrepresentation or physical or moral coercion to such a degree that the mind of the

testator is prejudiced and his free agency is destroyed, and all these operate as a present restraint in the making of the will: *Buhan v. Keslar,* 328 Pa. 312; *Phillips' Estate,* 244 Pa. 35, 43.

We are of opinion that the court below properly concluded that a confidential relationship existed between testator and appellant, that the burden was upon him to prove the non-existence of undue influence upon testatrix at the time of the making of the will, and, that said burden has not been sustained.

The decree is affirmed. Costs to be paid by appellant.