Erdeljac Will.

Argued March 22, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Harry J. Schmitt,* for appellant.

*Edward J. I. Gannon,* with him *Hazlett, Gannon & Walter,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 22, 1957:

On March 12, 1951, Tomo Erdeljac executed a will in which he, inter alia, bequeathed $500 to his friend of many years, Joe Podnar. On May 13, 1954, he exe-

cuted another will in which he cancelled out his legacy to Joe Podnar by leaving everything to his cousin, Joseph Mechon. One month later he died and the second will was probated. Joe Podnar appealed from the probate of the will and has since waged a battle for his lost $500 which, in point of money spent, time consumed, and energy expended, must exceed in value the extent of the modest bequest. Whether it be moral principle or financial interest which spurs his legal protest is beside the point. He is entitled to have his claim adjudicated and, accordingly, we have before us for final decision his complaint that Joseph Mechon induced, through improper means, Tomo Erdeljac to "forget" his friend Podnar.

The Court below, after a non-jury trial on the merits of the appeal from the probate, decided that Joseph Mechon did not exercise such undue influence on Tomo Erdeljac as to invalidate the creation of his mind of May 13, 1954. We thus have before us a simple question: Does the record support the lower Court's decision? We believe that it does. Joe Podnar builds his case on incidents, episodes, and observations, none of which in itself or in combination with all the others, demonstrates such a weakening of mind as would justify the assertion that Erdeljac did not know what he was doing when he substituted Mechon for Podnar in his will.

As evidence of Erdeljac's physical and mental infirmities, Podnar calls attention to the fact that Erdeljac was eighty years old when he affixed his signature to his second will, that he was forgetful about his pipe and tobacco, that he told long stories about his relatives in Yugoslavia, that he drank to excess, and that he was untidy in his personal attire. Practically all these charges, with the exception of the reference to age, were refuted by witnesses who testified in behalf

of the proponent of the will, but even if they were accepted as true, they would not, singly or in the aggregate, build up a battering power of sufficient strength to topple the presumption that a testator has not been unduly influenced, once it is established (which was not contested) that he possessed the necessary testamentary capacity and that the will was regular in its formal aspects. (*Williams v. McCarroll*, 374 Pa. 281, *Quein Will*, 361 Pa. 133.)

Whatever may have been the popular concept about age one hundred or even fifty years ago, it is a bright fact today that science, improved diet, community hygiene, and augmentation in rest periods have all combined to increase the span of salubrious living so that there is no presumption that in octogenarianism one must needs find senility and decreptitude. But, even before the present age of added longevity, history and the chronicles of the day have recorded legions of octogenarians, nonagenarians, and sometimes centenarians who did not lose the vigor of their mature years and in whom the wine of life never soured. Old age is no more evidence *per se* of feeblemindedness, than an unshaved chin is proof of sagacity and good judgment. But be all that as it may, there is no testimony that although Erdeljac was bedfast for six weeks prior to his death, he displayed at the time of the writing of his last will and testament any mental impairment which weakened his capacity for understanding and appraisement of the little world in which he lived.

The charge that Erdeljac was forgetful does not add any strength to Podnar's argument. The fact that some TV contestants are today winning fabulous sums of money because they are endowed with astonishingly formidable memories does not mean that the average person who forgets where he put his pipe and tobacco is a moron.

Paradoxically, Podnar argues that Erdeljac was forgetful and at the same time condemns him because he remembered too well. He testified that Erdeljac would sleep all day and then at night arouse the rest of the household so that he might regale them with twice-told tales of early days in Yugoslavia, particularly reciting the adventures of his two sisters and a nephew in the old country. Remembering and talking about the scenes of one's youthhood, especially when they occurred in a land far away, has, for elderly men and women, from time immemorial, been a pungent sauce with which to flavor the lean fare of the uneventful days of the present. Nor does the fact that elderly people talk long indicate they are lacking in intelligence. Garrulity is by no means confined to old age. The self-winding phonograph is found in all ages and in all walks of life. Erdeljac was an uneducated working man. He could not turn to books for solace and pastime, so he played his phonograph.

When he could not find willing or unwilling listeners, he turned to beer for companionship. Whiskey also was not a stranger to him. It was testified that Mechon supplied the testator with alcoholic beverages and Podnar contends that this was another demonstration of undue influence practiced by Mechon. The fact that one offers a drink or drinks to another is no evidence that he has designs on the other's property. Moreover, it was testified that Erdeljac paid Mechon for the pint of whiskey which he delivered every eight days. In addition, it was shown that Erdeljac took whiskey under a doctor's direction and prescription. And Podnar himself admitted that he himself took whiskey to Erdeljac.

There was no credible evidence that Erdeljac's companionable association with whiskey and beer had besotted his brain or that it had flooded his awareness on the day he signed the will of May 13, 1954.

Taking the entirety of the testimony produced by the contestant at face value, the record still does not establish that Tomo Erdeljac, with all of his drinking, smoking, Yugoslavian story-telling, illness and weakness during the last weeks of his life, was so disabled at the time he spelled out his name in ink at the bottom of the document which had been read and explained to him in English and in his own native Croatian language, that he did not with sober thought, mental clarity, and conscious appreciation, realize that he was giving to his cousin Mechon all his worldly goods.

The most that can be said in behalf of Podnar's claims is that Mechon was in an excellent position to exercise influence over Erdeljac, but between the opportunity to do harm and the accomplishment of harm stretches an ocean of meaninglessness unless it is spanned with credible substantive evidence, for which no piers were ever laid in this case.

From 1951 to 1954, Mechon saw Erdeljac nearly every day, and, prior to his last illness, he visited him four times a day. During his last illness he brought him soup twice a day. He and his wife, Mrs. Mechon, cared for him and comforted him. Kindness is not undue influence. (*King Will,* 369 Pa. 523.) Human nature being what it is, a disappointed and disinherited potential legatee is often ready to ascribe evil designs to his competitor who has been rewarded for a show of humanity which was equally within the compass of the disinherited one to accomplish, but to which opportunity he lent a deaf ear and a blind eye. Benevolence cannot be interpreted as undue influence unless the benevolence is a mask behind which hides a designing and greedy mind conspiring to deceive and to exploit.

Podnar contends that Mechon took advantage of a confidential relationship. We have often said that confidential relationship appears when the circumstances make it certain that the parties do not deal on equal terms but on the one side there is overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed. (*Wilson Will*, 364 Pa. 488, 493.)

The circumstances before us in this case in no way show an overmastering influence by Mechon over Erdeljac. But even if there were a so-called confidential relationship, the contestant would still have to show that the testator was "so weak physically and mentally as to be susceptible to undue influence." (*In re Schwartz's Estate*, 340 Pa. 170.) Physical weakness is a factor only insofar as it affects the mind. If one is in such a state of physical agony that, to avoid the additional torment of nagging entreaty, he agrees to the tormentor's requests, the law will regard his acquiescence as being coerced and therefore of no validity. But no amount of bodily disablement or annoyance will invalidate a testator's resolution, if his mind, like a high-flying plane, clears the mountain peaks of pain, cuts with an even keel through the storm of importunity and insistence, and lands successfully at the destination of an accomplished desire. Erdeljac did this. He was so satisfied with the provisions of the will that he spoke tranquilly and at ease with Mechon about the manner in which he should be buried and how the grass above his grave should be trimmed.

We see no reason to disturb the accomplishment of his wishes as expressed through his own voluntary acts, and the decree of the Orphans' Court of Allegheny County is accordingly affirmed, with costs to be paid by the appellant.