## Ahlberg et al. *v.* Gurley et al., Appellants.

*Wills—Probate—Issue devisavit vel non—Undue influence—Evidence.*

1. On an issue devisavit vel non, where undue influence in the making of a codicil is alleged, the burden of proof is not shifted to the proponents, because directions of the testatrix as to the codicil were conveyed by a daughter to the scrivener, who was the husband of a granddaughter, and both of these parties profited pecuniarily by the codicil.

2. In such case, as it was shown that testatrix was of sound mind, and there was no direct evidence of fraud or undue influence, and both parties were not strangers but relations to whom testatrix would naturally resort for help in the matter of making

her will, it was immaterial that such parties rendered assistance to testatrix in the making of the codicil.

3. Under the evidence in this case it was not shown that the disposition of her property made by the testatrix was an unnatural one.

Argued October 2, 1925.    Appeal, No. 88, March T., 1925, by defendants, from judgment of C. P. Allegheny Co., April T., 1924, No. 844, for plaintiffs n. o. v. in case of Flora Friday Ahlberg et al. v. Rose S. Gurley et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.    Affirmed.

Issue devisavit vel non.    Before SHAFER, P. J.

The opinion of the court below states the facts.

Verdict for defendants upon which judgment was entered for plaintiffs n. o. v., SHAFER, P. J., filing the following opinion:

The action is a feigned issue, framed in pursuance of a precept from the orphans' court, requiring the court of common pleas to cause an issue to be framed to try whether the writing in the last codicil to the will of Sophia Friday, dated December 28, 1920, "was procured by fraud or undue influence, or both, on the part of Flora Friday Ahlberg and others."

Sophia Friday, the testatrix, was born in Switzerland in 1844, where she received a common school education, was married to Jacob Friday and had one or more children, and came with her husband, to the United States in 1867. She learned to speak English well, but not to read English print easily, and English script she appears not to have learned to read, although she could write her name in Roman letters. The uncontradicted testimony is that she was a woman of considerable mental vigor and business capacity. There were born to her three sons and three daughters. The sons are all now dead, leaving children, and the daughters are still living. Her husband died in 1913, and after his death his will was contested. Thereafter she lived with her daughter

Flora, a widow without children, in a bungalow on Fifth Avenue, in Pittsburgh. For a long time before her death and up to her last illness, she was interested in the movements of the stock market, reading the stock reports in the newspapers and the Wall Street Journal, and frequently bought and sold various stocks during that time, not on margins, however. She made these purchases and sales through one or more stockbrokers who testified in the case, one of whom conducted a number of deals for her upon her own initiative, who said that he never knew her to make a loss. She was also active as a director in the Heidenkamp Glass Company of which Joseph Heidenkamp, an old friend of hers and her husband, was president, and active in connection with one or more other companies. In 1914 she had a will drawn, and in May, 1920, she had a friend of hers select a lawyer, who was unknown to her, Mr. Tredway, and go with her to his office to have a new will drawn. Each of these wills makes disposition of some oil paintings and other matters, and then a distribution substantially the same as the intestate law, except that some of the gifts were put in trust. No substantial change from the will of 1914 was made in that of May, 1920, except to relieve one of the shares from a trust, to strike out the name of Heidenkamp and leave that of Flora only as trustee in another share, and to provide that the executors, Heidenkamp and Flora, should not be called on to file a bond because of her absolute confidence in their integrity and disposition to carry out her wishes. On October 4, 1920, she had Mr. Tredway draw a codicil to her will, setting apart a sum for the maintenance of a vault in the cemetery, and a second codicil, being the paper in question in this case, was executed by her on December 28, 1920. This codicil gives all of her Heidenkamp Glass Company stock to four of her children or their descendants, omitting Mrs. Rose Gurley and the children of her deceased son Walter.

The testimony on the part of the contestants was introduced by showing statements said to have been made by Mrs. Friday to Mr. Tredway, and the friend who took her to him on the occasion of her visiting his office to have the will made, to the effect that she didn't want Flora or any of the rest of them to know anything about her making this will; that she couldn't do as she liked, and, when remonstrated with for saying so, she replied that "You don't know what it is to live with the devil," and the witness thinks she was referring to Flora, and she further is alleged to have said: "I never can do anything unless Flora approves it, if she knows of it." Testimony was also given showing that when afterwards she had made up her mind to buy a house for her daughter Rose, she insisted that the gentlemen who were to take care of the transaction for her should not come to her house, as she did not want Flora or the others to know about it. These circumstances are quite remote from the time of the making of the will, and seem to us to show nothing more than the ordinary secrecy which an intending testator frequently exercises, and a peevish dissatisfaction with Flora for some reason, and not very consistent with the fact that she had just made Flora a sole trustee instead of a joint one, and relieved her from the making of a bond on account of her absolute confidence in her. It appears from the evidence that Mrs. Friday was in apparently good health until the morning of December 28th, when a hemorrhage from the stomach occurred and Doctor Johnston, a lifelong friend of the testatrix, was called and came in a short time. He directed that she should remain in bed and lie quiet, for the reason that movement might produce further hemorrhage. There is no evidence that she lost enough blood to affect her mental condition in the least. She evidently thought, however, that she was in danger of death, and she had a priest called and received the last rites of the church. During the day Mr. A. E. Kountz, a member of the Allegheny County Bar and the husband of her granddaugh-

ter, was called on the 'phone by Mrs. Ahlberg, and told that Mrs. Friday was ill and wanted to see him on his way home, and he came in response to this call in the evening. Having been told by Mrs. Ahlberg what Mrs. Friday wanted, namely, the drawing of this codicil, he went out to have it written and after sometime had it written by a public stenographer in East Liberty, and in the meantime communicated with Doctor Johnston as to her capacity to make a will, and his willingness to be a witness, and came back in the evening with the codicil written out. The codicil was then signed by Mrs. Friday and witnessed by the doctor and the nurse and taken away by Mr. Kountz at the request of the testatrix.

The contention of the contestants is that under these circumstances the burden of proof was upon the proponents to show that the codicil was not procured by undue influence, and that at any rate they had furnished enough evidence to show that it was so procured. The first of these contentions is founded upon the evidence that the directions of the testatrix to the scrivener were conveyed by Mrs. Ahlberg and that the scrivener himself was the husband of a granddaughter of the testatrix, each of whom benefited pecuniarily by the codicil. We are of opinion that the facts stated do not shift the burden of proof to the proponents for the reason that both these parties were relatives to whom the testatrix would naturally resort for help in the matter of making a will, and not strangers, and that it was clearly shown that the testatrix was of sound mind and there was no direct evidence of any act of fraud or undue influence.

As to contestants' second contention that they had shown the codicil to be procured by undue influence, we are unable to find in the testimony evidence that anyone had exercised influence, due or undue, upon the testatrix, in the making of her will, or was likely to do so, unless it may be found in the testimony as to what occurred at Mr. Tredway's office six months before.

These declarations were admitted in evidence, whether rightly or not, as a supposed preliminary to the introduction of more direct evidence, and as was held in Herster v. Herster, 122 Pa. 239, they cannot have any force in establishing the substantive fact of undue influence.

It is also contended by the contestants that the disposition of her property made by the second codicil was not a natural one or one which it might be expected that the testatrix would make of her own accord. It is sufficient to say as to this that it is undisputed that the testatrix had not long before given to her daughter Rose a house which cost $16,000, and that there had been a very distinct coldness between her and the widow and children of her son Walter which had begun, so far as appears, by the refusal of Walter's widow to allow him to be buried in the vault which the testatrix and her husband had built, and which she made the codicil of the previous October to care for. There was no evidence whatever as to the value of the Heidenkamp Glass Company stock, and for aught that appears, the $16,000 may have been considered by her as an ample equivalent for Rose's share of it, and we have the testimony of Mr. Heidenkamp, and corroborated by some others to some extent, that Mrs. Friday had told him in the fall before the codicil was made, that she intended to give her Heidenkamp stock to four of the families, and that she did not intend to give Rose a share because she had given her the house, and the doctor who witnessed her will testifies that after it was witnessed she said to him: "You know, I gave Rose a house." It thus appears that the case of the contestants altogether fails to present evidence of any influence exercised on the testatrix which destroyed her free agency at the time and in the very act of making the will. It is therefore ordered that judgment be entered for the plaintiffs (proponents), notwithstanding the verdict.

Defendants appealed.

1925.]        Arguments—Opinion of the Court.

*Error assigned* was judgment for plaintiff n. o. v., quoting bill of exception.

*Frederic W. Miller,* with him *J. Rodgers McCreery,* for appellants, cited: Phillips' Est., 244 Pa. 35; McNitt v. Gilliland, 246 Pa. 378; Tetlow's Est., 269 Pa. 486; Caven v. Agnew, 186 Pa. 314.

*John C. Bane,* with him *A. E. Kountz,* for appellees, cited: Friend's Est., 198 Pa. 363.

PER CURIAM, November 23, 1925:
We affirm the judgment entered in this case on the opinion of the learned President Judge of the court below.