## Zolyan's Estate

Before Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Joseph Singer*, for exceptant.

*Thomas F. Mount* and *Joseph W. Henderson*, of *Rawle & Henderson*, contra.

STEARNE, J., March 27, 1942.—The appeal is from the probate of a will charging forgery. The hearing judge decided, as a fact, that decedent's signatures were forgeries. He refused to grant an issue to a jury. Exceptions to the opinion question the propriety of such ruling under the evidence.

All of the facts are meticulously contained in the opinion of the learned hearing judge. They need not be again recited. It will suffice to relate that decedent, according to the purported will, bequeathed his entire estate to his widow (the proponent), and named her executrix. The only other party in interest is an adult son, a feeble-minded person, whose estate is represented by a corporate fiduciary (the contestant). According to the petition for probate the value of the personal estate is $30,000, and the real estate $15,000.

The will was prepared by the scrivener in duplicate, and there are undoubtedly suspicious circumstances indicating that the document had not, in fact, been executed by decedent, but that the signatures had been forged after the death. We are, therefore, required to review the testimony to determine whether a verdict of a jury sustaining the will could be sustained.

The scope of the rights and duties of a judge of an orphans' court in hearing a will contest is defined by DeLaurentiis' Estate, 323 Pa. 70, wherein Mr. Justice

Stern, the opinion writer, reviews most of the decisions in this field. He writes (p. 79):

". . . the judge of the orphans' court conducting the hearing is not to constitute himself the jury, that is, to decide the case as he would if acting in the capacity of an ultimate fact-finding tribunal. His function is to decide whether there is a substantial dispute upon a material matter of fact, and such a dispute exists if a verdict that might be reached by a jury, even if at variance with his own opinion, would not have to be set aside as judicially untenable because contrary to the weight of the evidence."

Accordingly, where the testimony before a hearing judge reveals the absence of a substantial dispute upon a material matter of fact, and that a verdict of a jury either sustaining or setting aside a will could not be sustained, the grant of an issue to a jury would obviously be a useless formality. Under such circumstances, the judge is required to sustain or set aside the will as the case may be.

While the vast majority of the reported cases relate to refusal to grant an issue, and the probate is sustained, yet there are cases where, contrariwise, a hearing judge has set aside a will, without awarding an issue, where a verdict in *favor* of the will could not be sustained. It was so decided in Culbertson's Estate, 301 Pa. 438. That, too, was a forgery case. Judge Gest was the hearing judge. His reason for thus acting may be found in his opinion reported in 13 D. & C. 171. At page 182 he wrote: ". . . the theory of forgery is corroborated by extrinsic facts which cannot be questioned." In Morgan's Estate, 146 Pa. Superior Ct. 79, the uncontroverted fraudulent acts of the proponent negatived the possibility of sustaining a jury's verdict in favor of the will. The probate was accordingly set aside by the appellate court.

The inquiry, therefore, is whether this record discloses a substantial dispute.

Apparently, the basis for the hearing judge's finding of forgery was: (1) His acceptance of the testimony of contestant's handwriting expert to that effect, and (2) his own examination of the questioned signatures, and his deductions therefrom. The expert's opinion was that the signatures were inked in over carbon tracings of genuine signatures. The judge's finding was that "the guide lines were placed on the will before the ink signatures; that the signatures on the will are not in the hand of decedent, but are forgeries."

Proponent's handwriting expert testified that, upon his examination, he was unable to determine whether the signatures were genuine or were forged. In detail, he gave the reasons for his doubt. He said:

"So I wound up by having a doubt in my mind as to whether or not the signatures appearing on this will were forgeries or whether they were simply poor signatures and possibly had been marked over because I was unable with the microscope to determine definitely whether the outlines were under the ink or over the ink.

". . . I feel that while I am not of the definite opinion that it is forgery, neither am I of a definite opinion that it is genuine. . . ."

It may be noted that, where there is affirmative proof of execution of a will, the opinion evidence of handwriting experts is of little evidential value. The difference in opinion of these two concededly well-known experts illustrates the reason for such a principle. See cases cited by Mr. Hunter in his Pennsylvania Orphans' Court Commonplace Book, vol. 1, p. 243, §16(b).

Before the hearing judge, it is true, there was no direct proof of execution. This was because the subscribing witness was then absent and unheard of. However, before the register, at the probate, the subscribing witness did appear and, according to the record offered in evidence, swore that "he was present and did see and hear A. Zolyan, deceased, the testator herein named,

sign, seal, publish and declare, the same as and for his last will and testament." An attesting witness swore that she believed the signature of testator to be in his own proper handwriting. No citation of authority is needed that such proof complied with the requirements of the Wills Act of June 7, 1917, P. L. 403.

The auditing judge correctly admitted the record. This established prima facie proof: Keen's Estate, 299 Pa. 430; Plotts' Estate, 335 Pa. 81; Szmahl's Estate, 335 Pa. 89. The contestant offered the testimony of the handwriting expert, and his opinion that it was a forgery. The proponent, in the absence of the subscribing witness, proved his signature and offered again the testimony of the attesting witness who appeared at the probate.

The scrivener, an attorney, testified that he drew the will in duplicate, and handed both copies to decedent. The attorney intended to have had both copies executed and to keep one of the duplicates in his own file. However, decedent declined to execute the will at the time it was delivered. Upon subsequent inquiry by the attorney decedent told him that he had executed the will. The sister-in-law of proponent testified that decedent told her that he had left everything to the wife. The proponent, the widow, also testified that decedent told her that he had provided for her. In cases of charges of forgery, decedent's declarations and statements are admissible: Lappe v. Gfeller, 211 Pa. 462.

Under all of these circumstances, we are irresistibly drawn to the conclusion that a substantial dispute upon a material matter of fact exists. We are reluctant to withdraw this determination of fact from a hearing judge of known capacity and discernment, who had the witnesses before him. Had the decision rested upon his finding of fact we do not entertain the slightest doubt but that he has reached a true conclusion. However, under the authorities cited, this decision rests with a jury as the ultimate fact-finding tribunal—and a ver-

dict by a jury could be sustained even though it was at variance with the judge's own opinion.

The exceptions are sustained. Counsel is directed to frame an appropriate issue and present it to the hearing judge for his approval as to form. This issue is to be tried by a jury in this court.