## Ash Will.

Argued Dec. 1, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*A. J. White Hutton,* with him *Ben Branch,* for appellants.

*Frank X. York,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 19, 1945:

This is an appeal from the probate of a will. The petitioner sought the grant of an issue devisavit vel non to determine whether the testatrix possessed testamentary capacity and whether the will was procured by undue influence. The orphans' court refused the application.

Contestant is an incorporated church. It was the sole residuary legatee named in a prior mutual or reciprocal will executed by the decedent and her late husband.

It was also named as a beneficiary in several of the ten wills or codicils admitted in evidence (only seven of which were executed by the decedent). These testamentary writings were executed after the date of the mutual or reciprocal will, but before the will now contested. All contained clauses revoking prior wills. The proponents are the beneficiaries named in the probated will.

A preliminary question arises: Is a legatee in a prior will, whose legacy is revoked in the questioned will, a *"person interested"*, entitled to contest under Section 17 of the Register of Wills Act of 1917, P. L. 415, as amended by Act of 1941, P. L. 821, 20 PS section 1961 (Supp.)? The learned court below, on preliminary motion, decided that petitioner was entitled to contest. While no appeal was taken from such decision and it was not assigned as error, at the oral argument we questioned petitioner's status. We have considered the question and have concluded that the ruling of the learned court below was correct. While there appear to be no direct appellate decisions upon the question in this Commonwealth, the matter was inferentially ruled upon in *Curtis's Estate,* 253 Pa. 389, 98 A. 575. An examination of the opinion and the record in that case discloses that decedent, when fully competent, *destroyed* the prior will under which contestant claimed. *Because of this fact,* even though the questioned will might thereafter have been declared invalid, contestant would have received nothing from the estate. He was thus precluded by the court from contesting the probated will. The resulting implication is that contestant would have been considered a party in interest had the prior will been extant. Contrary to the factual situation in the *Curtis* case, this petitioner is a legatee not only in the mutual or reciprocal will of decedent and her husband, but in several of the intervening executed wills. Should this will be declared invalid, contestant's interest would appear under one or more of the other wills offered in evidence. See also: *Montgomery v. Grant,* 57 Pa. 243, a feigned issue on

two wills, and *Prager's Estate,* 70 Pitts. Leg. J. 217. The status of petitioner as contestant is supported by cases in other jurisdictions: see cases collected in L. R. A. 1918 A, page 470; 28 R. C. L. page 387; 82 A. L. R. page 878, 883.

The principal question raised by the contestant is whether proof of a confidential relationship between testatrix and proponents placed the preliminary burden upon proponents to establish *absence* of undue influence.

On three occasions we have prescribed the procedure in a will contest in the orphans' court under the Act of June 7, 1917, P. L. 363, Section 21(b), 20 PS 2582, on an application for an issue devisavit vel non, and where such issue has been granted and the case tried before a jury. In *Keen's Estate,* 299 Pa. 430, 149 A. 737, Mr. Justice WALLING said (page 440): "The record suggests a question of practice on appeal from the register's order probating a will. In such case, it is sufficient for the proponents in the first instance to offer the register's record of probate, including the will; thereupon, the burden of proof shifts to the contestants. See 1 Rhone Orphans' Court Practice (3d ed.), page 737; 28 R. C. L. 145. 'Until a prima facie case against the will has been made out by the contestant, they [the proponents] may rest upon the proof before the register, whose decree admitting the will to probate stands until duly reversed': *Whitaker's Est.,* 10 W. N. C. 139, opinion by Judge PENROSE." In *Plott's Estate,* 335 Pa. 81, 5 A. 2d 901, we approved the same procedure where an issue had been granted and the case tried. We reaffirmed this procedure in *Szmahl's Estate,* 335 Pa. 89, 6 A. 2d 267.

Proponents offered in evidence the record of probate before the register of wills. They also called the register of wills to identify his record, though it is not apparent why this was necessary. One of the *subscribing* witnesses was then called to identify his signature, the signature of testatrix, and that of another subscribing

witness who was absent in the armed forces. The *scrivener* of the will was called and qualified as an *attesting* witness. He testified solely as to the decedent's execution of the will and the witnessing thereof by both subscribing witnesses. Proponents then rested.

Proponents had established a *prima facie* case by the proof of the record of probate. The additional evidence as to the execution of the will added nothing to the *prima facie* proof of the validity of the will. There is nothing in the record which even remotely indicates that proponents undertook to establish the execution of the will de novo. Proponents having thus established a prima facie case in support of the will, the burden of proof temporarily shifted to contestant. Mr. Justice STERN said in *Szmahl's Estate,* supra, page 92: "The purpose of allowing the probate of the will to be placed in evidence is merely to establish a prima facie status, and affects only the order of proof. Such practice is justified by the fact that 'a register is a judge, and the admission of a will to probate is a judicial act': *Sebik's Estate,* 300 Pa. 45, 47; *West v. Young,* 332 Pa. 248, 251. The acceptance in evidence of the probate merely shifts to contestants temporarily the duty to come forward with evidence, but the proceeding remains at all times a hearing de novo. It is not uncommon in legal procedure for an ultimate burden of proof to rest upon one party throughout, but for the burden of coming forward with evidence to pass back and forth from one side to the other. If no testimony is offered other than the probate of the will itself, the legal result obviously should be, as the court below decided in the present case, that the probate is not impeached and must be accepted as conclusive, just as if there had been no appeal."

Being confronted with such prima facie case, contestant was required to come forward with evidence to establish mental incapacity or undue influence. We have repeatedly defined both disabilities. As to *mental capacity,* we have said: A man of sound mind and dis-

posing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it and of the persons and objects he desires shall be the recipients of his bounty: *Wilson v. Mitchell,* 101 Pa. 495; *Snyder's Estate,* 279 Pa. 63, 123 A. 663. Concerning *undue influence:* To constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of the will: *Keen's Estate,* 299 Pa. 430, 149 A. 737; *Cookson's Estate,* 325 Pa. 81, 188 A. 904; *Buhan v. Keslar,* 328 Pa. 312, 194 A. 917.

As to the burden of proof where a confidential relationship exists, we said ". . . where . . . there is *no evidence of weakened intellect,* the burden is upon those asserting undue influence to prove it, even where the bulk of the estate is left to one occupying a confidential relation": *Phillips' Estate,* 244 Pa. 35, 44, 90 A. 457.

With these principles as a guide we have examined the evidence to ascertain whether the contestant has met and overcome the *prima facie* proof of the validity of the will, which would entitle it to an issue devisavit vel non, on a substantial dispute of fact.

Ellen S. Ash, the decedent, a childless widow, died April 25, 1940, at the age of 79 years. Her estate amounted to approximately $40,000. She left a will dated October 11, 1939, which was duly probated, and from which this appeal is taken. Decedent's sole next of kin is a brother who was not made a party to this contest. By the will decedent bequeathed legacies totalling $3,500 to charities, $3,600 to named individuals and made specific bequests of the household furniture. The residue was left to four of the proponents, whose status,

as relates to decedent, was that of attending physician, attending professional nurse, caretaker, and "lawyer", in reality a bond salesman. The pastor of the appellant church testified, solely from hearsay, that decedent suffered from a cardiac and circulatory condition, which was progressive. There was no evidence of the physical and mental condition of decedent at the time of the execution of the will. The minister testified that her condition of mind was "foggy", but qualified his description as ". . . that which is usually with a senile person." A discharged housekeeper testified that she thought decedent had "funny" ideas because she wanted to refurnish her home and because she tied rings on her fingers with colored ribbons. Charles H. Kreamer, a co-executor of the will, and a member of the contesting church, testified. He was the local bank president, attorney in fact of decedent and looked after her affairs generally. He knew nothing of the present will until after the death and was naturally suspicious of the nature of the testamentary disposition of the residue. He testified that he did not believe that decedent was of sound mind. His impressions were formed because he believed decedent had erroneous ideas concerning the extent of her wealth. He counseled against unwise expenditures. On the other hand, as attorney in fact, he drew and signed checks in amounts varying from $15 to $1000 as gifts to various parties, including some of the residuary legatees, *solely because of decedent's directions.* All of these checks were given within four months of the execution of the will, and two of the largest within one month thereof. Another significant fact was that this witness, at the direction of decedent, drew a check for $7500 to contestant to pay for a memorial chancel and pipe organ. The record is not definite as to when the payment was made, but the installation was during the months of August and September 1939 and the dedication service was held September 3, 1939 (a month before the execution of the will). Decedent attended the dedication ceremonies, al-

though she was feeble and required assistance. It is also significant to note that Kreamer approved of the purchase by decedent of a fur coat and an automobile. In short, this witness, despite his expressed view that decedent suffered from impaired mentality, nevertheless followed her directions as to financial.expenditures.

It is to be observed that the attending physician was not called by contestant as a witness; nor was *any* medical evidence produced as to decedent's condition. Curiously enough, the scrivener was not examined either by counsel or the court regarding the facts and circumstances in connection with preparation of the will and what he did and said concerning the reading and explaining of the will to decedent before she executed it. See *Kline's Estate,* 322 Pa. 374, 377, 186 A. 364.

Where persons standing in a confidential relationship are bequeathed a considerable portion of an estate under a will, there naturally arises considerable conjecture and suspicion. But as we have frequently said: "Conjecture and suspicion do not take the place of testimony": *Rosenthal's Estate,* 339 Pa. 488, 496, 15 A. 2d 370. We agree with the court below that the testimony offered by contestant was not of such probative value as to establish *mental weakness.* Old age, sickness, distress or debility of body neither prove nor raise a presumption of incapacity: *Thompson v. Kyner,* 65 Pa. 368; *Lawrence's Estate,* 286 Pa. 58, 132 A. 786; *Aggas v. Munnell,* 302 Pa. 78, 152 A. 840; *Duncan's Contested Will,* 147 Pa. Superior Ct. 133, 23 A. 2d 357.

The learned counsel for appellant assumed that the existence of a confidential relationship between decedent and the principal legatees *alone* required the latter to show an absence of undue influence. His reliance upon *Schwartz's Estate,* 340 Pa. 170, 16 A. 2d 374, is ineffective because in that case (page 174) it appeared that decedent had a *mental and physical* weakness which rendered her condition "childish" and "almost infantile", and that she was "absolutely dependent" upon those

standing in the confidential relation. Under such circumstances, the burden was upon the proponents to establish the lack of undue influence.

As contestant clearly failed to overcome the prima facie proof of the validity of this will, the appeal must be dismissed.

The decree of the court below is affirmed, at the cost of appellant.