Franz Will.

Argued September 27, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*George S. Goldstein,* with him *Harold M. Cohen,* for appellants.

*L. C. Euwer,* with him *S. G. Alter,* for appellees.

OPINION BY MR. CHIEF JUSTICE DREW, November 13, 1951:

Geraldine E. Franz and Xavier W. Franz, Jr., grandchildren of testator, Franz Franz, brought these appeals from the decree of the Orphans' Court of Allegheny County refusing an issue devisavit vel non and dismissing their appeals from the admission to probate of a writing purporting to be the last will of Franz Franz.

Franz Franz died on January 14, 1948, at the age of 80, leaving to survive him two daughters, Helen Franz, who lived with him, and Mary Rothleder, and two grandchildren, Geraldine E. Franz and Xavier W. Franz, Jr., the children of a son, Xavier W. Franz, who had died on August 31, 1946. On October 28th or 29th, 1946, Franz Franz went to the residence of Samuel G. Alter, Esq., who had drawn an earlier will for him, and requested him to prepare the will in contest. Alter did so, but, on the instruction of Franz, did not make any provision for the children of the deceased Xavier Franz, although it had been provided in his earlier will that Xavier Franz was to share equally with testator's other children. The changes were made in the second and third paragraphs of the earlier will and these paragraphs, as changed, were incorporated verbatim as paragraphs 2 and 3 of the contested will. On October 30, 1946, Alter informed testator that the will was ready and, later in the day, after placing the will in a sealed envelope, turned it over to Helen Franz who had been sent for it. The following day, Franz took the will to the bakery shop of John and Margaret Einwag, who were his friends and neighbors, and asked them to read

it and sign it as witnesses. This they did after he had placed his signature on the document in their presence.

Seven days after the death of testator in 1948, the will of October 31, 1946, was admitted to probate and letters testamentary granted to the executor, Alter. Contestants filed their appeals from the decree of probate on March 1, 1949, and on May 24, 1949, a decree nisi was entered dismissing the appeals. Upon the petition of contestants a new hearing was granted on the ground of alleged after-discovered evidence and on August 25, 1950, the final decree was entered. These appeals followed.

In their petition in the lower court, contestants alleged that testator lacked testamentary capacity and was subjected to the undue influence of his daughter Helen at the time he executed his will. In support of these contentions, they called three medical doctors, who had attended testator at some time during his later years, and several lay witnesses who testified as to their personal relations with the decedent. However, none of these doctors were treating testator at the time of the signing of the will. Dr. Sexauer, the most recent attending physician in point of time of the execution of the will, examined Franz for the first time nine months after the execution. He found testator to be suffering from a painful cancer from which he subsequently died and testified that he appeared ten years older than his age, was hard to understand because of his advanced years and his difficulties with the English language, and that he thought he could be subjected to the influence of another. The lower court properly held that the testimony of these witnesses was too remote and inconclusive on the question of testamentary capacity.

The testimony of contestants' lay witnesses indicated that testator was a sick, aged man who nevertheless could take reasonable care of himself and manage

his own business affairs. William J. Deemer, a street car motorman, testified that he had seen testator in downtown Pittsburgh seven days before the signing of the will and that he was in a daze and in the custody of a policeman who, upon the witness' request, released Franz into his care. Deemer took testator home and left him at the foot of a flight of steps leading into his house, although the witness testified that he still appeared to be in a stupor of some nature. Jacob Theobald, another witness for contestant, who had been in the employ of decedent as a barkeeper for seven years, testified that he visited Franz on the day of the execution of the will and that testator complained of pains in the head and did not want to talk to the witness. On cross-examination the witness added, however, that he thought Franz did not want to understand him and did not want to lend him the money which he sought to obtain through this interview. Mrs. Frances Franz, mother of the contestants and a witness on their behalf, testified as follows: "Q. Had he suffered from any mental disorder or forgetfulness? A. Yes, he would forget. In 1945 he had amnesia and he was very sick then; and then at times he was bewildered, for quite a while. Q. Well after that did he recover from this amnesia? A. Yes. Q. And what was his condition then in October of 1946 with respect to this forgetfulness? A. Well, I wouldn't say that in that—that there were anything wrong with Grandpap, no. Q. I am sorry, I didn't hear you. A. I say Grandpap—didn't seem anything wrong; we could see nothing wrong with Grandpap, no. Q. In other words, he had recovered from his amnesia pretty well? A. Yes, I would say; yes."

In addition to the subscribing witnesses, who testified as to the proper execution of the will, proponents placed on the witness stand the manager of the Carrick Branch of the Colonial Trust Company in which testator had an account. This witness testified that he

had known Franz for approximately twenty years that he had transacted business with the bank and he felt testator knew the extent of his property, was mentally healthy and knew the natural objects of his bounty. Other witnesses, who were neighbors and friends of decedent and who visited him frequently in 1946, testified to the same effect as did Dr. Klinzing who attended Franz for the first time three months after the execution of the will. The scrivener of the will testified that Franz came to him unaccompanied and asked that the will be written in the form in which it was probated. The scrivener did not have any doubts as to the testamentary capacity of Franz at the time and discussed with him in a rational manner at some length the changes testator desired made in the old will and his reasons therefor.

This Court has, on numerous occasions held that a decedent possesses testamentary capacity ". . . if he has an intelligent knowledge regarding those who are the natural objects of his bounty, of what his estate consists, and of what he desires done with it, even though his memory has been impaired by age or disease", and that strong testimony is required to overcome evidence of competency given by the scrivener, subscribing witnesses and the attending physician: *Sturgeon Will*, 357 Pa. 75, 81, 53 A. 2d 139, and cases there cited. Although there is some conflict in the evidence as to the effect of testator's health on his mental powers, the record clearly demonstrates that testator, though a sick man and 80 years of age, had the necessary testamentary capacity to make a will.

Contestants introduced other witnesses who testified that decedent was dependent to a degree upon his daughter, Helen, and that he was susceptible to her influence in the managing of some of his business affairs. But, as this Court said in *Quein Will*, 361 Pa. 133, 145, 62 A. 2d 909, in defining undue influence suf-

ficient to void a will: "There must be imprisonment of the body or mind, frauds or threats or misrepresentations, or circumstances of inordinate flattery, or physical or moral coercion to such a degree as to prejudice the mind of the testator, or destroy his free agency, or to operate as a present restraint upon him in the making of the will." There is nothing in the instant record to show that Helen Franz exercised any such control over testator in the making of his will. She did not accompany testator to the home of his attorney, Alter, and was not present when testator discussed the drawing of the will with him nor when it was executed. Nor did she receive any greater share of testator's estate, under the will, than did each of his other living children. Significant evidence of testator's independence of another's influence is the striking similarity of the present will and the earlier will executed on November 7, 1945. In both wills testator specified that all his property was to be divided between his then living children in equal shares and that, in the event that any of his children should predecease him, that deceased child's or children's share should be divided among those living, share and share alike. The identical language and phrasing used in the 1945 will were employed in the will now contested and the only differences between the wills are the absence of the bequest to the then deceased Xavier Franz in the later will and the substitution therein of Alter as executor in place of Xavier Franz.

The granting of an issue devisavit vel non is not a matter of right. There must be a substantial dispute which can be determined only by a consideration of the evidence as a whole: *Lare Will*, 352 Pa. 323, 42 A. 2d 801. On appeal to this Court the chancellor's decision will not be reversed unless there appears to have been an abuse of discretion: *DeLaurentiis's Estate*, 323 Pa. 70, 186 A. 359. We have reviewed the record with

great care and are convinced that a substantial dispute has not been raised and that the chancellor's conclusion that a verdict against the will would have to be set aside as judicially untenable is amply supported by the evidence.

Decree affirmed.