## Kluchinsky Estate.

Argued March 16, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*W. J. Krencewicz,* for appellants.

*Thomas B. Noonan,* for appellee.

OPINION PER CURIAM, August 20, 1954:

The decree of the court below is affirmed upon the following excerpts from the opinion of President Judge GANGLOFF:

"On December 5, 1947, there was probated before our Register of Wills a writing, bearing date May 20, 1943, as the last will and testament of Mary Kluchinsky, a widow, who died on September 27, 1947, at the

age of seventy seven years. On September 8, 1952, almost five years after the will had been probated, an appeal from probate was entered by Albert Kluchinsky and Joseph Kluchinsky, sons of the decedent. The will so probated is a simple will, testamentary in character and in it the testatrix gives her entire estate to her daughter, Beatrice Marchini, a widow, who lived with her mother for a number of years before her death. The decedent left to survive her daughter and two sons above named and another son by a previous marriage, namely, John Burchulis . . .

"The Register of Wills Act of 1917 governs here. Section 16 of that Act provides that probate shall be conclusive upon all parties unless an appeal is taken within two years from the date of probate. While the Act does not include a proviso with respect to an allegation of fraud, it seems that where fraud (forgery) is in good faith alleged, the statutory period for appeal may be extended: Culbertson's Estate, 301 Pa. 438; Amer Estate, 30 West 17. However that may be, the proponent expressly waived the right to object because of the delay in filing the appeal . . .

"The proponent first offered in evidence, and properly so, the record of probate, thereby shifting the burden of going forward with the evidence upon the contestants: Geho Estate, 340 Pa. 412; Ash Will, 351 Pa. 317; Dugacki Will, 356 Pa. 143. The contestants undertook this burden in the following manner: they first called the two subscribing witnesses to the will and the decedent's daughter Beatrice Marchini, all as for cross-examination, and then followed with testimony which, the contestants contend, casts doubt and suspicion upon the testimony of the two subscribing witnesses and the daughter. Upon the question of call-

ing witnesses as for cross-examination, the contestants are bound by their testimony to the same extent that they are unable to contradict it: Morris v. Halford, 352 Pa. 138; and to this should be added that the subscribing witnesses are to be regarded not as partisan but as the court's witnesses: Szmahl's Estate, 335 Pa. 89. Then again, the daughter would have been a competent witness otherwise; see Morris Will, 349 Pa. 387 . . .

"The testimony of the above mentioned three witnesses does not show that the decedent in express language directed her daughter to sign her name for her but the testimony does show that the witnesses came at the request of the decedent; that the latter saw her daughter sign her name and that she thereupon made her X. The acts and circumstances surrounding the execution of the disputed will, as detailed by the daughter and the two subscribing witnesses, plainly indicate a compliance with the requirements of the Wills Act: see Morris Will, supra . . .

"The governing statutory provisions are Section 744 of the Orphans' Court of 1951: 'On appeal from the register . . . the court may find, upon the testimony taken before the register, that a substantial dispute of fact exists and require a jury to decide the issue of fact. In all other cases, the court shall hear the testimony de novo . . .'; and Section 745 (a) 'Will Contest. When a substantial dispute of fact shall arise concerning the validity of a writing alleged to be testamentary, any party in interest shall be entitled to a trial of this fact by a jury.' Clearly then the hearing judge, in a will contest such as we have here, is called upon to determine whether there is a substantial dispute upon a material matter of fact: Lewis Will, 364 Pa. 225; the granting of an issue devisavit vel non

is not a matter of right; there must be a substantial dispute which can be determined only by a consideration of the evidence as a whole: Lare Will, 352 Pa. 323; Franz Will, 368 Pa. 618; a mere conflict in the testimony does not make the dispute a substantial one; there can be no substantial dispute where a verdict of a jury against the will would have to be set aside as judicially untenable: Sturgeon Will, 357 Pa. 75, citing DeLaurentis Estate, 323 Pa. 70; Lare Will, supra . . .

"Guided, as we should be, by the principles above mentioned and weighing all of the testimony and the applicable surrounding circumstances, having in mind that we saw and heard the witnesses and closely observed their appearance, general bearing, conduct on the stand, demeanor, manner of testifying, such as candor or frankness (see Quein Will, 361 Pa. 133, at page 148), the fair, reasonable and fully warranted estimate of the weight of the testimony here can be stated thus: the daughter and the two subscribing witnesses are credible witnesses and their testimony that they saw the decedent execute her will by a mark under the circumstances clearly and positively testified by them is true. On the other side, the testimony of the contestants rises no higher, in weight, than what may be termed suspicion and inferences from suspicious circumstances. Conjecture and suspicion do not take the place of testimony: Gracey v. Rutherford, 366 Pa. 196, and the cases there cited. That the attorney who prepared the will did not know that it had been executed and by reason whereof he prepared a bill in equity, containing an allegation that the decedent died intestate is even doubtful as suspicion not to mention suspicion itself. That the daughter mistakenly called Roman's place a saloon, under the other facts,

hardly warrants the label of being a suspicious mistake. That Roman said he signed the will after decedent's death turned out to be a misunderstanding as to what he had reference to. That Dorenda's credibility should be questioned because he accused one of the contestants of handing him a beating has no basis in fact but the fact that the beating by one of the contestants was not denied by the latter, notwithstanding he could have taken the witness stand for such purpose, does show the bitterness present between the parties and in this connection it might be mentioned that it seems strange indeed that the contestants made no effort at any time, so far as disclosed by the testimony, to tell their sister about the equity suit and this is so notwithstanding they apparently live in the same community and their sister lived in the house during all of these years. That there are three shades of ink, when measured over against the positive testimony of what the three witnesses saw and heard, coupled with the fact that more than one pen appears to have been on hand and used at the execution of the will, also rises no higher in weight than a suspicious circumstance. And this is true as to the pens used and the appearance in the testimony of ball point pens. Dorenda first said the pens were fountain pens and certainly the type of point on any pen, be it a fountain pen and an ordinary pen holder, has a great deal to do with the writing itself. Several theories may be stated with respect to the type of pens used. The theory that fountain pens were used is just as logical as the theory that ball point pens were used. In this connection our appellate court said upon the question of opinion testimony at pages 311 and 312 of Pochron Will, supra [367 Pa. 306]: 'The philosophy of the doctrine that opinion testimony alone will not overthrow testimony of

actual fact is well expressed by Mr. Chief Justice DREW in Ray, to use, v. Philadelphia, 344 Pa. 439 . . . "An opinion is only that; it creates no fact. It is what someone thinks about something, and the thought may be precisely accurate or totally inaccurate, and yet represent the absolutely honest conviction of the person who expresses it. Because of this, opinion evidence is generally considered of low grade, and not entitled to much weight against positive testimony of actual facts. There is a great difference between factual and opinion testimony. In the one the witness testifies to fact and certifies that what he says of it is true. In the other, he only testifies to his opinion that such a thing is true, and certifies only to his integrity of belief. He says he believes his opinion to be correct, but he does not warrant it to be true, and does not pretend that he cannot be mistaken." ' Then again, the discrepancies in the testimony of the daughter and Dorenda as to who wrote in the date, when the words 'her mark' were written and the inability to say who crossed out the attestation clause are, under all the circumstances, normal errors of recollection and of very little weight in respect of the question of a substantial dispute. To all of which may be added that the testimony raises no substantial dispute upon the question of handwriting.

"In short, the suspicious circumstances brought out in the testimony and the inferences we are asked to draw therefrom when measured conscientiously and fairly over against the positive testimony relating to the actual execution of the will in this case, fall far short of raising a substantial dispute upon a material matter of fact.

"The appeal must therefore be dismissed."

President Judge RHODES dissents.