Glesenkamp Will.

Argued March 30, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Paul Kern Hirsch,* with him *C. John Tillman* and *Hirsch & Weise,* for appellant.

*George S. Goldstein,* with him *Charles H. Fulton* and *Morris F. Cohen,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, September 27, 1954:

The Orphans' Court of Allegheny County sustained an appeal from the probate of a will by the Register on the ground that decedent did not possess testamentary capacity. This appeal followed.

Joseph A. Glesenkamp, Jr., the decedent, died December 2, 1951, unmarried, with next of kin consisting of twenty-two first cousins. The probated will is dated October 31, 1951. It was prepared by a lawyer and witnessed by a bank officer and decedent's physician. The will devised and bequeathed his entire estate to Villette O. Carson, the proponent, a first cousin, the appellant. Decedent's attorney was named executor.

The issues presented by the appeal are: (a) testamentary capacity (b) undue influence and (c) forgery.

Counsel withdrew the request for an issue *devisavit vel non* and stipulated that the case should be heard and decided by Judge Cox. This procedure is authorized by Act of April 22, 1874, P. L. 109, §1, 12 PS §688. No question has been raised as to the regularity of this procedure. The findings of fact are, therefore, equivalent to a verdict of a jury. On appeal the function of an appellate court is to determine whether or not the hearing judge's findings of fact and conclusions of law, approved by the court in banc, are sufficiently supported by the evidence.

Judge Cox, with skill and patience, heard the testimony. The printed record, in three volumes, is over

1850 pages in length. With meticulous care he made an exhaustive analysis of the evidence. After considering the evidence in connection with the applicable principles of law he concluded and found that Joseph A. Glesenkamp, Jr., the decedent, at the date of the execution of the questioned will, did not possess testamentary capacity and sustained the appeal. Upon exceptions, the court in banc affirmed the decree.

Since the hearing judge has so meticulously and at length considered all the evidence and accurately applied the pertinent legal principles, we deem it unnecessary to repeat in detail what has been so amply and ably found and decided. A *summary* will suffice for for the present purpose.

The court found that the charge of forgery was not sufficiently proved. The question of undue influence was not decided since decedent was found not to possess testamentary capacity. Decedent was conceded to be weak-minded, with a guardian in charge of his estate. The single question is whether or not decedent had *sufficient* testamentary capacity to make a valid will.

Decedent was the only child of Joseph and Anna Glesenkamp. He was born weak-minded. He was cared for by his parents and was never placed in an institution. The mother died March 24, 1947, at the age of eighty-six years. His father died three weeks later, at the age of eighty-seven years. Decedent was then fifty-five years of age. Upon the death of the mother, Andrew Hess, of West Virginia, came to Pittsburgh and arranged for her burial and later performed the same service for decedent's father. Mr. Hess was the only nephew of the mother. The combined estates of the father and mother and property in decedent's own name totaled approximately $150,000. Upon the death of his parents the decedent required care because

of his mental deficiency. In lieu of placing him in an institution Mr. Hess employed Mrs. Carson, the proponent, as housekeeper and companion. Mr. Hess also retained Fred C. Houston, Esq., a lawyer, associated with his son, William McC. Houston, Esq., in the practice of law under the firm name of Houston & Houston. The attorneys arranged for the settlement of the intestate estates of the parents. Being incapable of attending to his own affairs, the attorneys decided to have a guardian appointed for decedent's estate. On May 26, 1947, upon the petition of appellant, the Court of Common Pleas of Allegheny County appointed a guardian for his estate, upon adjudging decedent "to be weak-minded, unable to take care of his estate, . . . and liable to become the victim of designing persons." Counsel for appellant stipulated that decedent's mental condition was one of *amentia* and not *dementia*. The former is a permanent absence or deficiency of mind. In the case of *dementia* it is possible to have lucid periods, with the individual *temporarily* freed from mental disease.

Mrs. Carson, the proponent, performed her duties as housekeeper and companion of decedent from the date of the mother's death until that of decedent—a period of four years and eight months. During that period she received a total salary of $13,958.75, a maintenance allowance for her ward of $26,750.00 and vacation expenses for decedent and herself of $9,300.00. It is not questioned that Mrs. Carson gave excellent care and attention to decedent and that decedent was more comfortable and happier than if he had been institutionalized.

The will was executed October 31, 1951, while the guardianship was still existing. Decedent died of cancer of the liver one month after the execution of the will. At the date of the execution of the will, while

a huge debilitated adult of fifty-nine years, decedent had the mental developments, habits and intellectual attainments of a child of approximately five years. The determinant question is whether or not decedent possessed *sufficient* mental capacity to make a will.

Testamentary capacity has frequently been defined by this Court. Mr. Justice (later Chief Justice) HORACE STERN, in *Lewis Will*, 364 Pa. 225, 72 A. 2d 80, said (p. 232) : ". . . A decedent possesses testamentary capacity only if he has a full and intelligent knowledge of the act in which he is engaged and of the property he possesses, together with an intelligent perception and understanding of the disposition he wishes to make of his property and of the persons and objects he desires to participate in his bounty: Ash Will, 351 Pa. 317, 321, 322, 41 A. 2d 620, 622; Dugacki Will, 356 Pa. 143, 148, 149, 51 A. 2d 627, 630; Patti's Estate, 133 Pa. Superior Ct. 81, 90, 91, 1 A. 2d 791, 796." In *Williams v. McCarroll*, 374 Pa. 281, 97 A. 2d 14, Mr. Justice BELL stated the same principle in this language (p. 292) : " '. . . a decedent possesses testamentary capacity ". . . if he has an intelligent knowledge regarding those who are the natural objects of his bounty, of what his estate consists, and of what he desires done with it, even though his memory has been impaired by age or disease" ' : Franz Will, 368 Pa. 618, 622, 84 A. 2d 292; also Sturgeon Will, 357 Pa. 75, 53 A. 2d 139; Ash Will, 351 Pa. 317, 41 A. 2d 620; Olshefski's Estate, 337 Pa. 420, 11 A. 2d 487." In testing the extent of decedent's testamentary capacity, Dr. Henninger, a psychiatrist, called by the proponent, testified: "Anxious to determine, if I could, to what extent he was aware of his worldly goods, we went into that to some extent. He had no definite knowledge of his wealth at all. He knew that he had a guardian and that money came from the bank to him,

and that he owned the house he lived in, and that he had enough he didn't have to work. I wouldn't feel that beyond that he had much knowledge of his means at all." Upon this evaluation the doctor was of opinion, as were proponent's other witnesses, that decedent possessed *sufficient* testamentary capacity to make a will provided that all decedent was required to know was a *"general"* knowledge of what property he possessed and his next of kin. The witness frankly stated that, if the requirement of such testamentary capacity necessitated a *"full"* knowledge of his estate and kindred, decedent did not have such capacity. Our examination of the evidence convinces us, as it did the learned hearing judge and the court in banc, that the decedent was so mentally deficient that he was incapable of making a valid will. As such he was incapable of possessing, and did not possess, the quantum and quality of knowledge of his estate and the natural objects of his bounty which he was required to possess in order to have testamentary capacity.

Since the testamentary incapacity of decedent was so clearly established we need not discuss the effect of a will drawn by an attorney and witnessed by a physician and a bank officer. Their opinions under the present circumstances, are of slight, if any, value. Certainly their expressed opinions of decedent's testamentary capacity were contrary to the overwhelming weight of the evidence. We need not, therefore, consider the question of undue influence. We are not favorably impressed, however, with the manner and circumstances under which the will was prepared and executed.

The decree appealed from is affirmed. Costs to be paid out of the estate.